UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOJA BABAVEISI,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER J. LAROSE, *et al.*<br><br>Respondents. | Case No.: 25-cv-3746-GPC-SBC<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

On December 23, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet."). On January 2, 2026, Respondents filed a return to the petition. ECF No. 5 ("Ret."). On January 5, 2026, Petitioner filed a traverse. ECF No. 6 ("Trv."). A hearing was held on January 9, 2026. ECF No. 11. For the following reasons, the Court GRANTS IN PART the petition for writ of habeas corpus.

/ / /

/ / /

/ / /

## I. BACKGROUND

### a. Factual Background

Petitioner is a native and citizen of Iran, Pet. ¶ 12, and fled Iran due to persecution for his participation in the protests against the Kurdish opposition. Pet. ¶ 4.[1] He was "shot at with live rounds, beaten, and arrested by government forces…[and] was told by intelligence authorities that he would be killed if Petitioner did not cooperate with them." Pet. ¶ 4. Petitioner, thus, fears returning to Iran and being killed for his political opinions and involvement. *Id*.

On March 18, 2025, Petitioner entered the United States near Roma, Texas without inspection. *Id*. ¶ 2; Ret. at 2, Ex. 1. That same day after entering the country, Petitioner was encountered by border patrol agents and taken into custody.[2] Ret., Ex. 1. The border agents determined that Petitioner was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). Ret. at 2. Petitioner was then placed into expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1). *Id*. Petitioner, at that time, indicated a fear of returning to Iran and was referred for a credible fear interview. *Id*. On April 18, 2025, the credible fear interview was conducted and resulted in a positive determination. *Id*., Ex. 5.

On July 2, 2025, Petitioner was issued a Notice to Appear (NTA) charging him as inadmissible under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). *Id*. at 2, Ex. 3. The filing of the NTA initiated removal proceedings against Petitioner under 8 U.S.C. §

---

[1] In his Traverse, Petitioner adds that he is a Kurdish national of Iran, was active in the Democratic Party of Iranian Kurdistan, and fled Iran after participating in the protests of the killing of Mahsa Amini, a Kurdish-Iranian woman, by Iranian police. Trv. at 2.

[2] In his petition, Petitioner alleged he was detained by Immigration and Customs Enforcement ("ICE") on or about July 2, 2025. Pet. ¶¶ 1, 15, 19, 20. The Respondent's Return asserts that Petitioner has been in ICE custody since March 24, 2025. Ret. at 1. Attached to their Return, Respondent provided a Form I-213, indicating Petitioner was detained on March 18, 2025. *See* Ret., Ex. 1. In his Traverse, Petitioner now claims that he has been in ICE custody since March 24, 2025.

1229a, which remain ongoing. *Id.* at 2. The NTA scheduled Petitioner's initial master calendar hearing for July 14, 2025. *Id.*, Ex. 3. At the hearing, the Parties informed the Court that this initial master calendar hearing was delayed to allow Petitioner to update his asylum application.

On September 8, 2025, Petitioner filed an I-589 asylum application. Petitioner remains detained at the Otay Mesa Detention Center. Pet. ¶ 15. Petitioner's removal proceedings are pending, and a master calendar hearing is scheduled for January 27, 2026. Ret., Ex. 4.

### b. Procedural Background

On December 23, 2025, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. On January 2, 2026, Respondents filed a return. ECF No. 5. On January 5, 2026, Petitioner filed a traverse. ECF No. 6.

Petitioner presents three claims under the Fifth Amendment Due Process clause. Petitioner claims that his detention violates substantive and procedural due process. Pet. ¶¶ 42-47 (First Cause of Action). Additionally, Petitioner argues that the January 2025 Designation, Office of the Secretary, Dept of Homeland Security, Designating Aliens for Expedited Removal, 15 Fed. Reg. 8139 ("2025 Designation")—which expanded the application of expedited removal—does not unmistakably apply to Petitioner. *Id.* ¶¶ 48-51 (Second Cause of Action). Third, Petitioner alleges that the Respondents' detention of Petitioner without notice or an opportunity to be heard violated due process. *Id.* ¶¶ 81-85 (Seventh Cause of Action).

Second, Petitioner has alleged three causes of action, asserting that Respondents violated the Administrative Procedure Act ("APA"). The APA causes of action allege that Respondents have (1) unlawfully detained Petitioner in order to deprive him of his liberty interest and to eliminate his due process rights, (2) not provided Petitioner notice or consideration of his individualized facts before detaining Petitioner, and (3) violated 8

U.S.C. § 1225(b) because the "expedited removal statute does not apply and may not be applied to individuals who were 'paroled' into the United States." *Id.* ¶¶ 58, 66, 73 (Third, Fourth, and Fifth Causes of Action).

Finally, Petitioner alleges he was detained in violation of the Fourth Amendment when he did not receive any judicial determination of probable cause for his arrest. *Id.* ¶¶ 74-80 (Sixth Cause of Action).

The Petitioner asks the court to (1) grant the instant petition for a writ of habeas corpus, (2) declare that Petitioner's detention without an individualized determination violates the Due Process Clause of the Fifth Amendment, (3) declare that refusal to allow Petitioner a meaningful bond and custody redetermination hearing violates the INA, APA, and Due Process, (4) issue an order prohibiting the Respondents from transferring Petitioner from the district without the Court's approval, (5) issue an order requiring Respondents to provide a bond and custody redetermination hearing within 14 days, (6) grant Petitioner injunctive relief to obtain all medical records regarding suicidal diagnosis based on the conditions at the detention center, and (7) award Petitioner attorney's fees and costs under the Equal Access to Justice Act and on any other basis justified under law.

## II.  LEGAL STANDARD

Under 28 U.S.C. § 2241, a writ of habeas corpus may be granted to any petitioner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Rasul v. Bush*, 542 U.S. 466, 473 (2004). As explained by the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and…the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Pinson v. Carvajal*, 69 F.4th 1059, 1067 (9th Cir. 2023) (habeas actions limited to challenges of the legality or duration of confinement).

A prisoner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *See Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009).

## III.  DISCUSSION

### a.  Jurisdiction

Petitioner invokes this Court's jurisdiction under the habeas provision, 28 U.S.C. § 2241, the Suspension Clause, federal question, 28 U.S.C. § 1331, and the APA, 5 U.S.C. § 702. Respondents maintain that this Court lacks jurisdiction over Petitioner's claims, stating that the claims and relief are barred by 8 U.S.C. § 1252(g).

8 U.S.C. § 1252(g) states that, with limited exceptions, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any alien." 8 U.S.C. § 1252(g) (emphasis added); *Reno v. Am.-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999). In that light, § 1252(g) is a narrow statutory provision that concentrates on those three discrete actions. *Reno*, 525 U.S. at 482.

Respondents argue that the § 1252(g) bar applies because Petitioner's claims arise "from the Department of Homeland Security's decision to commence removal proceedings against him." Ret. at 4. Specifically, the government's decision "unavoidably triggers mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) until the conclusion of his removal proceedings." *Id*. However, rather than challenging the decision to commence proceedings, Petitioner challenges the legality of his detainment, specifically objecting to the application of § 1225(b)(1) and the prolonged length of detention. Trv. 5-6. Detainment of Petitioner does not fall within the three discrete actions identified in § 1252(g) and, thus, would not deprive the Court's jurisdiction. *See, e.g.*, *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 704 (D. Minn. 2025) (finding a claim against detention did not fall under Section 1252(g)); *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 224-26 (D. Vt.

2025) (same); *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020) ("Although the court may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution.").

### b. Merits

Petitioner claims that his detention violates the APA, the Fifth Amendment's Due Process Clause, and the Fourth Amendment. Pet. ¶¶ 42-85; Trv. at 5-13. Respondents, in turn, maintain that Petitioner is mandatorily detained under 8 U.S.C. § 1225(b)(1), has not been subjected to unconstitutionally prolonged detention, brings inappropriate habeas claims in terms of conditions of confinement, and fails with its Fourth Amendment claims. Ret. at 5-12.

### i. Detainment Under the INA

Section 1225(b)(1) states that "[i]f an immigration officer determines that an alien…who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7)…and the alien indicates either an intention to apply for asylum…or a fear of persecution, the officer shall refer the alien for an interview by an asylum officer under." 8 U.S.C. § 1225(b)(1)(A)(ii). Once the noncitizen has been referred for an interview, "[i]f the [asylum] officer determines at the time of the interview that an alien has a credible fear of persecution…the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Thus Section 1225(b)(1) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Until the noncitizen's asylum application has been fully considered, "nothing in the statutory text imposes any limit on the length of detention…[or] says anything whatsoever about bond hearings." *Id.*

Here, Petitioner is a noncitizen and an applicant for admission. *See* 8 U.S.C. § 1225(a)(1). An immigration officer determined Petitioner was inadmissible under 8 U.S.C.

§§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I). Ret. at 2. Exs. 1-3. Petitioner, however, indicated a fear of persecution, was given an interview, and received a positive determination. Ret. at 2. These facts indicate that Petitioner falls within the purview of Section 1225(b)(1).

While Petitioner points out an inconsistency with his NTA, where the "arriving alien" classification box was left unmarked, it goes too far to say that the defect "confirms that DHS elected to proceed under § 1229a, not §1225(b)(1)." Trv. at 11. That argument ignores prior documentation identifying Petitioner as "arriving." Ret, Ex. 2. It also sidesteps the fact that the NTA identified both 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I) as the sources of Petitioner's inadmissibility, which places Petitioner under Section 1225(b)(1). *Id.*, Ex. 3.

Thus, Petitioner is lawfully detained under Section 1225(b)(1).

### ii. Prolonged Detention

### 1. Entitlement to Due Process Claim

While Petitioner is mandatorily detained under Section 1225(b)(1), he has raised a due process claim, arguing that his detention has become constitutionally prolonged. Trv. at 6. Respondents contend, relying on *Thuraissigiam*, that inadmissible arriving noncitizens have no due process rights other than those afforded by statute. Ret. at 7.

In *Thuraissigiam*, the respondent was a noncitizen detained close to the border and shortly after unlawful entry. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Keeping those characteristics in mind, the Supreme Court held that those "in respondent's position ha[ve] only those rights regarding admission that Congress has provided by statute." *Id.*

After the decision, district courts have taken two different approaches. In one blanket approach, district courts have dismissed or denied habeas petitions from those in Petitioner's position when they challenge detention on due process grounds and go beyond

1  statutory protections. *See, e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665, 669 (S.D. Tex.
2  2021) ("As far as Petitioner is concerned, whatever procedure Congress has authorized is
3  sufficient due process."); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 336 (W.D.N.Y.
4  2021) ("Petitioner is on the threshold of initial entry into the United States and [ ] he
5  accordingly is not entitled to procedural protections beyond those provided by statute.");
6  *Zelaya-Gonzalez v. Matuszewski*, No. 23-CV-151-JLS-KSC, 2023 WL 3103811, at *4
7  (S.D. Cal. Apr. 25, 2023) ("Binding Ninth Circuit and Supreme Court precedents are clear
8  that Petitioner lacks any rights beyond those conferred by statute, and no statute entitles
9  Petitioner to a bond hearing."); *Mendoza-Linares v. Garland*, No. 21-CV-1169-BEN-
10 AHG, 2024 WL 3316306, at *2 (S.D. Cal. June 10, 2024) (same).

   However, a majority of courts have opted for an alternative, as-applied approach. Specifically, while facial challenges to mandatory detention have been rejected, *see Demore v. Kim,* 538 U.S. 510, 530-31 (2003), nothing has been said "about whether due process may *eventually* require a hearing." *Black v. Decker*, 103 F.4th 133, 149 (2d Cir. 2024) (emphasis in original). This is also true for *Thuraissigiam*. Though *Thuraissigiam* limits an arriving noncitizen's due process rights in regard to admission, the court did not address the issue of prolonged detention. *See Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) ("*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to admissibility to the United States. This was the sole claim presented and the respondent expressly asked for a chance to reapply for asylum and admission.").

   Additionally, "the Supreme Court has…explicitly stated that as-applied constitutional challenges to 8 U.S.C. § 1226(c)[, which cover mandatory detention under that statute,] are not foreclosed." *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *5 (E.D. Cal. July 25, 2025). While the Ninth Circuit has not spoken on whether due process requires a bond hearing for

noncitizens mandatorily detained, the First, Second, and Third Circuits have held that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention ... under [section 1226(c)]." *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (alterations in original) (citation omitted); *see Black*, 103 F.4th at 138; *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 209-10 (3d Cir. 2020). Though § 1225(b) was not specifically addressed by the Supreme Court or the three Circuit courts, § 1225(b) contains similar mandatory detention provisions to § 1226(c). Thus, the reasoning underlying this as-applied approach would seemingly also transfer to § 1225(b).

      Given this background, a majority of district courts have found prolonged detention under § 1225(b) without a bond hearing can eventually give rise to due process issues. *See, e.g.*, *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *2 (S.D. Cal. Nov. 12, 2025) ("This Court agrees with the majority position that a petitioner detained under Section 1225(b)(1) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 25-cv-98-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b)…'essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'") (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019)); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (collecting cases); *A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens

being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever.").

The Court agrees with the majority. While *Thuraissigiam* limits an arriving noncitizen's due process rights in regard to admission, a petitioner may still assert a due process claim against prolonged mandatory detention without a bond hearing.

### 2. Violation of Due Process

To determine whether a petitioner's detention has been unreasonably prolonged, the Court applies the *Banda v. McAleenan*'s six-factor analysis as a framework, which weighs: (1) total length of detention to date; (2) likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019).[3]

**Total Length of Detention to Date.** Petitioner has been detained for nearly ten months. Petitioner argues that this detention is, thus, prolonged, as detention exceeding six months is presumptively unreasonable. Pet. at 7. Respondents, however, maintain that "Petitioner's current detention does not fall within the range [that] courts have found to be unreasonable." Ret. at 9. In Respondents' view, detention should be for a much longer period to be unreasonably prolonged. *Id.*

While close to 10 months of detention does not presumptively establish unreasonably prolonged detention, it is also not so little time as to preclude constitutional scrutiny. *See Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *3

---

[3] Respondent offers a similar three-factor balancing test from *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022). Given that all factors considered in the *Lopez* test are encapsulated in the *Banda* framework, the Court shall apply the more comprehensive *Banda* framework.

(S.D. Cal. Nov. 12, 2025) ("The Court agrees with Respondents that the length of Petitioner's detention to date—almost 12 months—does not by itself, without more, establish prolonged detention in violation of due process. But neither does that length of detention serve as a safe harbor or insulate Petitioner's case from constitutional review."). Additionally, courts have previously found that similar or shorter lengths of detention were unreasonable. *See, e.g.*, *Gao v. LaRose*, No. 25-CV-2084-RSH-SBC, 2025 WL 2770633, at *5 (S.D. Cal. Sept. 26, 2025) ("The Court finds that Petitioner's detention for over 10 months without a bond hearing, in the context of the specific circumstances described above, has become unreasonable and violates due process."); *Amado v. United States Dep't of Just.*, No. 25-CV-2687-LL-DDL, 2025 WL 3079052, at *6 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable."); *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) (finding detention for nearly nine months weighs in favor of the petitioner).

Thus, this factor weighs in favor of Petitioner, though it is not determinative alone.

**Likely Duration of Future Detention.** The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1119 (W.D. Wash. 2019) (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 859 (D. Minn. 2019)).

Here, the length of future detention is unclear. Petitioner does not have an individual merits hearing scheduled but a master calendar hearing on January 27, 2026. ECF No. 8; Trv. at 3. Petitioner also filed an I-589 asylum application on September 8, 2025, which is still pending. Pet. ¶ 12; Ret. at 2-3. Petitioner, thus, is at the initial stages of his removal proceedings. "While the Court cannot definitively determine the duration of petitioner's future detention, based on the current record, it appears likely petitioner will face many

more months and potentially years in detention," especially if there is a petition for review before the Court of Appeals. *Belqasim v. Bostock*, No. 2:25-CV-01282-LK-TLF, 2025 WL 3466971, at *9 (W.D. Wash. Oct. 28, 2025), *report and recommendation adopted sub nom. Belqasim v. Hermosillo*, No. 2:25-CV-01282-LK, 2025 WL 3170929 (W.D. Wash. Nov. 13, 2025); *Guatam v. Corr. Corp. of Am.*, No. 3:25-CV-3600-JES-DEB, 2026 WL 25846, at *5 (S.D. Cal. Jan. 5, 2026) ("[A] removal order may not become final until after the appeals Petitioner could file, to both the Board of Immigration Appeals and Ninth Circuit…These appeals can take a long time."); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *7 (E.D. Cal. July 25, 2025) ("Although the Court recognizes that future events are difficult to predict, the Court nevertheless finds that in the event Petitioner's applications for relief from removal are denied, Petitioner's possible administrative appeal and judicial review by the Ninth Circuit will be sufficiently lengthy such that this factor weighs in favor of Petitioner.").

Thus, the Court finds this factor falls in favor of Petitioner.

**Conditions of Detention.** For the third factor, "[t]he more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at the Otay Mesa Detention Center are "indistinguishable from penal confinement." *See Kydyrali v. Wolf,* 499 F. Supp. 3d 768, 773 (S.D. Cal. 2020); *Amado v. United States Dep't of Just.*, No. 25-CV-2687-LL-DDL, 2025 WL 3079052, at *6 (S.D. Cal. Nov. 4, 2025). Further, Petitioner suffers from osteoporosis and experiences severe depression. Trv. at 3. His medical records indicate that his mental condition and PTSD has been exacerbated by his detention and puts him at risk for further deterioration. *See id*. at 12; ECF No. 10. Petitioner also alleges "[d]etention

conditions exacerbate severe osteoporosis, creating a high risk of irreversible injury." Trv. at 12. Thus, this factor weighs in favor of Petitioner.

**Delays in Removal.** The fourth and fifth factors concern delays in the removal proceedings caused by Petitioner or the government. In terms of the fourth factor, Respondent maintained at the hearing that Petitioner's initial master calendar hearing was delayed to allow for Petitioner to update his asylum application. The Parties also acknowledged at the hearing that the current master calendar hearing might be further delayed in the face of raised competency issues. However, this factor is meant to weigh and protect against dilatory tactics; good-faith actions to litigate and defend are not considered. *See Lopez v. Garland*, 631 F. Supp. 3d 870, 881 (E.D. Cal. 2022) ("Petitioner is entitled to raise legitimate defenses to removal ... and such challenges to his removal cannot undermine his claim that detention has become unreasonable."); *Gonzalez v. Bonnar*, No. 18-CV-05321-JSC, 2019 WL 330906, at *4 (N.D. Cal. Jan. 25, 2019) ("The government cites no authority for the proposition that a petitioner who pursues his available legal remedies must forego any challenge to the reasonableness of his detention in the interim and the Court is unaware of any. "); *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019) ("[T]he Court agrees Petitioner has not engaged in dilatory tactics and finds this factor favors granting relief…Petitioner is entitled to raise legitimate defenses to removal, including filing a petition for conditional residence, and such challenges to his removal cannot undermine his claim that detention has become unreasonable."). Thus, this factor is neutral.

As for the fifth factor, though Petitioner maintains that Respondents' "actions have contributed significantly to the prolonged detention of Petitioner," the Petitioner points to no facts to support that conclusion. *See* Trv. at 10. There is also no indication in any of the filings that Respondents caused any delay in the proceedings. In sum, the both the fourth and fifth factors are neutral.

**Likelihood of Final Removal Order.** For the sixth *Banda* factor, the Court evaluates the likelihood that the removal proceedings will result in a final order of removal, or "[i]n other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Banda*, 385 F. Supp. 3d at 1120. Here, Petitioner claims he has been persecuted by Iranian Police due to his Kurdish nationality and political involvement. Based upon this persecution, Respondent has determined that Petitioner's fears are credible. Petitioner will now have the opportunity to present evidence supporting his asylum claims. While it remains unclear how an IJ will eventually rule, Petitioner has so far presented a defense which reduces the likelihood of a final removal order. Thus, the Court finds this factor slightly favors Petitioner.

**Weighing the Factors.** In sum, at least four of the six factors weigh in favor Petitioner, with the other factors being neutral. Accordingly, the Court concludes that Petitioner's detention has become unreasonably prolonged. Thus, Petitioner is entitled to a prompt and individualized bond hearing, where Respondents must justify Petitioner's continued detention "by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released." *Sadeqi v. LaRose*, No. 25-CV-2587-RSH-BJW, 2025 WL 3154520, at *4 (S.D. Cal. Nov. 12, 2025); *Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 1:25-CV-00098-SAB-HC, 2025 WL 2099343, at *9 (E.D. Cal. July 25, 2025); *Toktosunov v. Wamsley*, No. 2:25-CV-1724-TL, 2025 WL 3492858, at *6 (W.D. Wash. Dec. 5, 2025).[4]

---

[4] The Petition also makes claims, contradicted by the record, that are premised on having been released (Pet. ¶¶ 45 and 65) and paroled (*Id*. ¶ 72). Similarly, Petitioner also references the limitations on dismissing pending removal proceedings even though Petitioner's proceedings were not dismissed. In his Traverse, Petitioner abandons these unsupported claims and confines himself to the unreasonably prolonged detention argument. While additional claims remain, having reached its conclusion as to the prolonged detention claim for relief, the Court declines to decide the merits of Petitioner's other claims.

## IV. CONCLUSION

Based on the reasoning above, the Court **GRANTS IN PART** the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

In his petition, Petitioner requests release, or in the alternative, a bond hearing before an immigration judge. Pet. at 17. "The Court finds, consistent with other post-*Jennings* cases, that the appropriate remedy is a bond hearing before an immigration judge[.]" *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 (E.D. Cal. 2022); *Abdul-Samed*, 2025 WL 2099343, at *9. If Respondents fail to comply with this order, Petitioner may seek further relief from the Court at that time.

Accordingly, the Court **ORDERS** Respondents to provide Petitioner with a bond hearing within seven (7) days of this Order.[5] Respondents are **ORDERED** to **FILE** a Notice of Compliance within ten days of providing Petitioner with a bond hearing. The Clerk of Court **SHALL** enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED.**

Dated: January 9, 2026

Hon. Gonzalo P. Curiel
United States District Judge

---

[5] In his prayer for relief, Petitioner requests an award of costs and reasonable attorney's fees. Pet. at 17. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order.